UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE GILBERTO GONGORA POOT,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondent.

Case No. 2:26-cv-02580-TLF

ORDER GRANTING HABEAS RELIEF

Petitioner, Jose "Poni" Gilberto Gongora Poot, filed this federal habeas corpus petition under 28 U.S.C. § 2241. Dkt. 6. Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). *Id.* The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 5.

Petitioner argues his detention: (1) violates the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act, and its implementing regulations; and (2) respondent Executive Office for Immigration Review (EOIR) violated petitioner's constitutional and statutory rights by (a) failing to record the bond hearing provided to petitioner or (b) failing to provide any contemporaneous decision explaining the decision to detain petitioner. Dkt. 1 at 23.

Petitioner requests (1) immediate release, or (2) an individualized determination, and a meaningful opportunity to be heard, of his eligibility for release within three days

of this Order, or (3) a hearing before this Court to determine whether petitioner presents a flight risk or danger that justifies continued detention. *Id*.

Respondents argue petitioner is not entitled to habeas relied because (1) he was not entitled to any notice or a pre-deprivation hearing before arrest; (2) his claim that he was entitled to due process at the time of arrest should be dismissed under the abuse of the writ doctrine; and (3) his challenge to the Immigration Judge's (IJ) custody determination under 8 U.S.C. § 1226(a) is premature and the Court should require prudential exhaustion. Dkt. 8 at 2. Respondents request the petition be denied, or in the alternative, stay the proceedings for 30 days to permit the IJ to issue the written bond memorandum. *Id*. [1]

Having considered the petition, the briefing, and the record, the Court GRANTS the petition in part; petitioner's continued detention violates due process. The respondents must release petitioner within 24 hours and respondents may require appropriate conditions of his release. Alternatively, if respondents cannot determine appropriate conditions of release within 24 hours, they must release petitioner without conditions of release.

## BACKGROUND

Petitioner is a 53-year-old noncitizen who has lived continuously in the United States for over twenty-five years. Dkt. 1 at 12. He has had employment at various restaurants throughout his tenure in the United States and has worked as the lead line cook at the same Portland restaurant for the past eight years. *Id*. His current employer, a U.S. citizen, sponsored petitioner's immigration bond request. *Id*.

[1] The Bond Memorandum was issued August 10, 2026. Dkt. 11-1, Declaration of Alicia Vial Beesely ¶ 2.

Petitioner was arrested in 1995 for attempting to shoplift merchandise valuing less than $100 and, in 2009, for assault and harassment after allegedly attempting to break up a bar fight. Dkt. 1 at 13; *see also* Dkt. 9-2, Form I-213 at 5 (stating he was arrested for theft in 1995 and, in 2008, was arrested for two counts of assault and one count of harassment). Neither arrest led to a conviction. *Id*.

Petitioner was twice voluntarily returned to Mexico by immigration authorities in 2000. *Id*. at 13; Dkt. 9-2, Form I-213 at 5.

On May 8, 2026, Immigration and Customs Enforcement (ICE) arrested petitioner without prior notice as he was driving to work. *Id*. at 13. He came to the attention of Portland Enforcement and Removal Operations (ERO) during a "routine docket check." Dkt. 9-2, Form I-213 at 5.

The Form I-213 identifies petitioner's two voluntary returns in 2000, his two previous arrests, and the fact that he had never applied for immigration benefits or relief as the "totality of circumstances" supporting ERO's issuance of a Form I-200 on April 17, 2026. *Id.*

On April 17, 2026, U.S. Department of Homeland Security issued a warrant for petitioner's arrest. Dkt. 9-5, Warrant for Arrest of Alien. This was dated and signed by Immigration Officer Caitlin S. Wener, SDDO, stating that petitioner's identity was biometrically confirmed and that his voluntary statements and/or "other reliable evidence" affirmatively indicate lack of immigration status or that he is removable. *Id.* at 2. This Warrant also includes a finding that Officer Warner "determined that there is probable cause to believe that [petitioner] is removable from the United States"; and a

verification that the warrant was served on, and read to petitioner in English on May 8, 2026, by an officer who listed a number (TW68650), but their signature is illegible. *Id.*

Petitioner contends officers verified his identity only after arresting and handcuffing him. *Id*. at 13. The Form I-213 states the officers first conducted an interview and, after petitioner stated he was illegally present in the U.S., told him he was "under arrest for violating immigration law and took him into custody without resistance." Dkt. 9-2, Form I-213 at 5.

While in custody, petitioner had illnesses and his eyesight has deteriorated. *See* Dkt. 11-2, Declaration of Jose Gilberto Gongora Poot. His family has faced severe financial difficulties because he is the main source of employment and income for his family, and his daughter has had to go to the emergency room for health crises due to the stress of her father's absence. *See* Dkt. 11-3, Declaration of Marfina Morgan, petitioner's wife.

The Department of Homeland Security classified petitioner as subject to mandatory detention under 8 U.S.C. § 1225(b)(2), asserting that he is an "applicant for admission" not entitled to release on bond and was detained without an individualized custody hearing. Dkt. 1 at 14. On May 29, 2026, petitioner, along with others, filed a writ for habeas corpus arguing he was entitled to a bond hearing under 8 U.S.C. § 1226(a) as a member of the Bond Denial Class in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. September 30, 2025), *affirmed,* __ F.4th __, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). The Honorable Tiffany M. Cartwright granted Mr. Gongora-Poot's habeas corpus petition and ordered a bond hearing under U.S.C. §

1226(a). *Gongora-Poot v. Hernandez*, Case No. 2:26-cv-01856-TMC, 2026 WL 1649053 (W.D. Wash., June 8, 2026).

The bond hearing was held on June 24, 2026. Dkt. 1 at 15. Petitioner, represented by counsel, submitted 291 pages of evidence. Dkt. 1 at 15; Dkt 11-4, Bond Packet. The IJ denied bond and ordered petitioner remain detained, concluding petitioner had not established he is not a flight risk. Dkt. 1 at 15; Dkt. 9-3, Order of the Immigration Judge at 2.

Petitioner contends the IJ stated, during the bond hearing, that he gave very little weight to petitioner's two prior arrests and his voluntary returns from 2000 and instead focused his questioning exclusively on petitioner's use of a social security number that was not for his employment purposes. Dkt. 1 at 17, Dkt. 11 at 6. The IJ, John Odell, issued a check-box decision finding "no bond" and that petitioner "failed to show that h[e] is not a Flight Risk." Dkt. 9-3, Order of the Immigration Judge at 2. Petitioner appealed the IJ's denial of the bond request to the Board of Immigration Appeals, and the appeal is still pending. Dkt. 10, Declaration of Deportation Officer Rita J. Soraghan (Soraghan Decl.) ¶ 13.

On June 30, 2026, a different IJ, Drew Nishiyama, issued a summary of the oral decision entered on June 30, 2026 and, in a check-box order, held petitioner was ordered removed to Mexico. Dkt. 9-4 at 6.

On August 10, 2026, the written bond memorandum issued by the Immigration Judge was submitted to petitioner's counsel. Dkt. 11-1, Declaration of Alicia Vial Beesely ¶ 2. The memorandum is not in the record and respondents have stated they do not seek additional briefing. *Id*. ¶ 3.

## DISCUSSION

### 1. Abuse of the Writ Doctrine

The abuse of the writ doctrine "'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) (quoting *Calderon v. United States Dist. Ct.*, 163 F.3d 530, 538 (9th Cir. 1998) (en banc)). When considering the abuse of the writ doctrine in the context of Section 2241, the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") second or successive provisions do not govern, but "inform [judicial] consideration." *Calderon v. Thompson*, 523 U.S. 538, 558 (1998).

The common law doctrine of the abuse of the writ doctrine may apply to successive habeas petitions challenging immigration detention filed under section 2241. *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) ("Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim."). The court must "look to the substance of the claim ... and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application." *Eldridge v. Howard*, 70 F.4th 543, 552 (quoting *Brown v. Muniz*, 889 F.3d 661, 674 (9th Cir. 2018)).

In *McClesky*, the Supreme Court examined the scope and procedure of the abuse of the writ doctrine and explained: "When a prisoner files a second or subsequent [habeas petitioner], the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it

notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *McClesky v. Zant*, 499 U.S. 467, 494 (1991); *see also Eldridge*, 70 F.4th at 552. The burden to disprove abuse then shifts to petitioner. *Id*. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may still be excused if they can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. *Id.* at 494-95.

Petitioner argues that respondents' failure to conduct an individualized custody determination and provide an opportunity for petitioner to be heard in that process prior to or contemporaneous with the initial arrest was a violation of his due process rights. Dkt. 1 at 21.

Respondents provide a footnote stating that "Federal Respondents note this claim should also be dismissed under the abuse of the writ doctrine because it is an improperly filed claim in a successive petition" and cite *Mendoza Araiza v. Hernandez*, No. 2:26-CV-01892-LK, 2026 WL 2071149, at *3-4 (W.D. Wash. July 17, 2026). Dkt. 8 at 2. In *Mendoza*, the Court held a third petition was barred by the abuse of the writ doctrine because petitioner "had a full and fair opportunity to raise due process claims regarding his bond hearing and bond decision in *Mendoza Araiza II*." *Mendoza*, 2026 WL 2071149, at *3.

Here, petitioner was a member of the class for a class action complaint and habeas corpus petition, and the issues focused on whether petitioner was held under 8 U.S.C. Section 1225(b)(2) or Section 1226(a) and whether he was subject to mandatory detention. *Rodriguez Vazquez et al. v. Bostock,* et al., No. 25-cv-5240-TMC, Dkt. 1, Complaint and Petition (3-20-2025). After the petitioners prevailed on summary

judgment, Mr. Gongora Poot filed a follow-on petition, along with two other petitioners, seeking to enforce the judgment of the court in the class action. Case No. 2:26-cv-01856-TMC, Dkt. 1, petition for writ of habeas corpus. In that petition, he alleged only that he "was entitled to consideration for release on bond under 8 U.S.C. § 1226(a)" and the relief requested was a bond hearing. *Id.* at 2-5.

This case is similar to the issue presented in *De La Torre Ferretiz, v. Hernandez*, No. 2:26-CV-02235-JHC, 2026 WL 2123037, at *2 (W.D. Wash. July 23, 2026), where the court held, "because the current petition is not identical to the first and advances substantively different claims, the abuse of writ doctrine does not apply."

In this situation, petitioner's first habeas corpus petition was addressed as a class action petition, with a follow-up individual petition, based on common facts, alleging the same statutory issue, among a group of *Rodriguez Vazquez* class members.

The current petition raises different, as-applied due process violations that petitioner states allegedly occurred at the time of petitioner's arrest (and later in the time sequence of his detention) and could not have been raised in the first petition, given the class action. Dkt. 9 at 8.

Accordingly, the Court follows the reasoning of Judge Chun in *De La Torre Ferretiz, v. Hernandez* and holds abuse of the writ doctrine does not apply in this case.

**2. Due Process**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S.

319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a particular administrative procedure provides the process constitutionally due "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). After applying the test, the Court held "1226(a)'s procedures satisfy due process, both facially and as applied to [petitioner]." Even so, the Court expressly stated:

> "In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures. "Due process is a flexible concept that varies with the particular situation." *See Yagman*, 852 F.3d at 863 (quoting *Shinault v. Hawks,* 782 F.3d 1053, 1057 (9th Cir. 2015)). The government agrees that its position here does not mean detained aliens can never bring as-applied due process challenges to § 1226(a)."

*Id*. at 1213-14.

Respondents argue that, because petitioner was not in active removal proceedings or subject to any conditional release at the time of his arrest, he was not entitled to any notice or pre-deprivation hearing before detention. Dkt. 8 at 4-5. Respondents rely on

*Garcia Gabriel 2026 v. Hermosillo*, No. 2:25-CV-02594-DGE-GJL, 2026 WL 194233, at *5 (W.D. Wash. Jan. 26) and *Cotoc Yac De Yac v. Hermosillo*, No. 2:25-CV-02593-DGE-TLF, 2026 WL 124334, at *4 (W.D. Wash. Jan. 16, 2026). In *Garcia Gabriel*, the petitioner had initially been detained and was subject to an Order of Release. 2026 WL 194233, at *5. Similarly, in *Cotoc Yac De Yac*, the petitioner had been detained and subsequently released on Alternate to Detention as a condition of parole. 2026 WL 124334, at *4. Both cited cases deal with petitioners who had been initially detained and subject to orders of supervision, which were rendered moot upon the termination of the underlying removal proceedings.

This case presents different circumstances. Before his May 8, 2026 arrest, petitioner had no interaction with DHS since his two voluntary returns to Mexico in 2000. Dkt. 9-1, I-213 Form at 6. He was arrested without prior notice and remained in custody until DHS served him with a Notice to Appear three days later, on May 11, 2026. Dkt. 9-1, Notice to Appear. Respondents do not cite authority holding that a noncitizen in petitioner's circumstances has no due process rights at the time the government initially arrests him and deprives him of his liberty simply because he was not in active removal proceedings or subject to conditional release.

The *Mathews* test applies to initial immigrations arrests and detentions, because the Fifth Amendment Due Process Clause protects the liberty interests of noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent); *see Moncebais v. Bondi*, No. 5:26-CV-268, 2026 WL 1862153 (S.D. Tex. Mar. 27, 2026) (applying the *Mathews* balancing test to a

petitioner detained pursuant to 8 U.S.C. § 1225(b)(2) who had lived continuously in the United States for 32 years and ordering his immediate release.). Accordingly, the Court will consider each *Mathews* factor in turn to determine whether petitioner's arrest and detention comport with constitutional due process requirements.

**A. Private Interest**

As to the first factor, a liberty interest protected by due process "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'"; on the other hand, a liberty interest may "arise from an expectation or interested created by state laws or policies. . . ". *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005); *Ingraham v. Wright,* 430 U.S. 651, 672-73 (1977). The right to liberty under the Fifth Amendment has been held to be a human right, to include freedom from bodily restraint and punishment. *Rochin v. California,* 342 U.S. 165, 169-170 (1952); *see also U.S. v. Salerno,* 481 U.S. 739, 748-750 (1987) (due process is satisfied if detention decision is based on a finding of future dangerousness when the hearing process includes: defendant is represented by counsel, the burden is on the government to show future dangerousness by clear and convincing evidence, and there is adversarial testing in a hearing conducted by a neutral judicial officer, with procedural protections that protect the liberty interest of a criminal defendant in the pretrial new arrest phase of the case).

Petitioner has been in the United States continuously since 2000. He has been working as a lead line cook at the same local Portland restaurant for eight years, and his current employer chose to sponsor his bond request and wrote a letter attesting to his integral role in her restaurant. Dkt. 11-4, Bond Packet at 188-89. He is the father of

four U.S. citizen children and is the main breadwinner for the family. Dkt. 1 at 12. His family has lived in the same family home since 2007. *Id*.

The Court does not find support for the government's inference that petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. Dkt. 8 at 5 (asserting that because there is a legitimate government interest in enforcing immigration laws and ensuring that persons who are subject to those laws will appear for their removal proceedings, petitioner was not entitled -- under due process as applied -- to a pre-deprivation hearing at the time of his arrest); *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action); *see also Zadvydas v. Davis*, at 693. Constitutionally protected interests in liberty are strengthened as noncitizens establish lives in the United States, even without permission from the government to reside here. *Moncebais v. Bondi*, 2026 WL 1862153, at *11 n.8 (citing *Zafra v. Noem*, No. EP-25-CV-541, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025) (collecting cases) and *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1148 (5th Cir. 1997) (holding that the Due Process Clause "protects an individual's liberty interest which is viewed as including an individual's freedom to work and earn a living and to establish a home and position in one's community." ).

This Court agrees with the reasoning of *Moncebais*: "[I]t follows that liberty interests in freedom from detention increase as other liberty interests, like the freedom to earn a living and establish a home, extend for years without a deprivation by the government." *Moncebais*, 2026 WL 1862153, at *5

Thus, the first factor weighs in petitioner's favor.

**B. Risk of Erroneous Deprivation**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

In *Rodriguez Diaz*, the Ninth Circuit held that "the existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation. *Rodriguez Diaz*, 53 F.4th 1209. The Court stated:

> "Pursuant to § 1226(a) and its implementing regulations, when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8).[2] This involved evaluating [petitioner's] likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons."

*Id.*

Multiple courts have held that 1226(a) requires an individualized custody determination *before* detention. *See, e.g.*, *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) ("…section 1226(a) affords [petitioner] an initial custody determination before exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk."); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020) (holding that, before detention "§ 1226(a) and its

---

[2] The provision reads: "Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding. Such an officer may also, in the exercise of discretion, release an alien in deportation proceedings pursuant to the authority in section 242 of the Act (as designated prior to April 1, 1997), except as otherwise provided by law." 8 C.F.R. § 236.1(c)(8).

implementing regulations require ICE officials to make an individualized custody determination”); *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025) (“If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk.”); *Curimilma Quille v. Blanche,* No. 26-CV-2818 (HG), 2026 WL 1453889 , *4-*5 (E.D.N.Y. May 22, 2026) (holding petitioner was denied due process because ICE's initial custody determination was inadequate and 1226(a) requires an individualized custody determination); *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, *4 (E.D. Pa. June 17, 2026) (“The initial [1226(a)] custody determination requires “an individualized determination as to ... whether the noncitizen is a ‘danger to property or persons’ and is ‘likely to appear for any future proceeding.’”).

Here, no evidence in the record suggests that ICE made an individualized custody determination before or contemporaneously with petitioner’s detention. Petitioner came to the attention of Portland Enforcement and Removal Operations during a “routine docket check.” Dkt. 9-2, Form I-213 at 5. The Form I-213 identifies petitioner’s two voluntary returns in 2000, his two previous arrests, and the fact that he had never applied for immigration benefits or relief as the “totality of circumstances” supporting ERO’s issuance of a Form I-200 on April 17, 2026. *Id*. This “totality of circumstances” does not identify any individualized assessment of petitioner’s likelihood of appearing at future proceedings or his dangerousness.

Petitioner contends that officers verified his identity only after arresting and handcuffing him. Dkt. 1 at 13. The Form I-213 states that officers first conducted an interview and, after petitioner stated that he was illegally present in the United States, told him he was "under arrest for violating immigration law" and took him into custody without resistance. Dkt. 9-2, Form I-213 at 5. It appears that the first-time petitioner was notified of the charges against him was when the Notice to Appear was issued three days after his arrest. *See* Dkt. 1 at 14 ("Petitioner asked if he was being arrested for a crime and the officers told him they would not answer his question.").

Yet respondents offer no contemporaneous record demonstrating that an authorized ICE officer made an individualized determination that petitioner posed a flight risk or danger sufficient to justify detention rather than release. *See Dos Reis*, 2026 WL 1746649, at *5 (ordering release and holding "[a] contemporaneous, individualized custody determination would require ICE to explain why detention, rather than release on conditions, is necessary for this Petitioner. It would also create a record that permits meaningful review of whether the required procedure occurred.").

Although petitioner was provided with a bond hearing, a later bond hearing does not necessarily cure the initial due process violation. *See Dos Reis*, 2026 WL 1746649, *3 (citing *Lopez Benitez*, 795 F. Supp. 3d at 497 (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding "a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance")).

Accordingly, the second factor favors petitioner.

**C. The Government's Interest**

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)). "The Supreme Court has instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id.* (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

But the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Court adopts the reasoning set forth in *Dos Reis*:

> "The Government has legitimate interests in ensuring appearance at removal proceedings and protecting the community. *See Zadvydas*, 533 U.S. at 690. Those legitimate interests, however, support detention only when the Government connects them to the individual detainee. The Government has not shown Petitioner is dangerous. Nor has it shown that he poses a flight risk that cannot be mitigated by bond or conditions. The process § 1226(a) contemplates—requiring ICE to make and document a particularized custody determination—imposes no undue burden. On balance, Petitioner's continued detention violates the Due Process Clause"

*Dos Reis,* 2026 WL 1746649, *5.

Accordingly, all three Mathews factors favor petitioner.

Petitioner requests immediate release, while respondents contend that petitioner is not entitled to immediate release based on the assertion that his habeas petition is

premature. Dkt. 8 at 10–12.[3] The Court concludes that immediate release is appropriate because petitioner's continued detention violates his Fifth Amendment right to due process.[4] Because the Court has analyzed and granted relief based on the *Mathews* factors, under Fifth Amendment due process as applied to the specific circumstances in this case, the Court declines to address the remaining issues in the petition and declines the respondent's request for a 30-day stay.

## CONCLUSION

For all these reasons, the Court GRANTS IN PART and DENIES IN PART petitioner's habeas petition

1) Respondents **ARE ORDERED TO** release petitioner **within 24 hours** of this Order.
    a. Respondents may issue appropriate conditions of release as determined by respondents.
    b. Alternatively, if respondents do not issue reasonable conditions of release within 24 hours, they must release petitioner without conditions.

---

[3] Courts in other districts have held petitioners who have been living in the United States for many years, sometimes decades, and have been detained under 1226(a) are entitled to immediate release, rather than an initial bond hearing. *See Caal Coc v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-2387-DC-DMC-HC, 2026 WL 1651022 (E.D. Cal. June 8, 2026)(collecting cases in which the court has ordered immediate release of petitioners who were not previously afforded parole), *report and recommendation adopted*, No. 1:26-CV-02387-DC-DMC (HC), 2026 WL 1816128 (E.D. Cal. June 24, 2026); *Dos Reis v. McShane,* No. CV 26-3775, 2026 WL 1746649 (E.D. Pa. June 17, 2026).

[4] Respondents argue only that the claims related to the bond hearing analysis require prudential exhaustion, and because the Court does not reach that claim, the Court will not address the prudential-exhaustion argument. Dkt. 8 at 5–10.

2) Within two business days of petitioner's release, respondents must file a certification with this Court confirming the date and time petitioner was released from custody.

3) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining petitioner unless and until he is provided with adequate notice and a hearing, consistent with due process, before an immigration court to determine whether re-detention is appropriate.

4) Petitioner may file a motion with a request for attorney fees and costs under the Equal Access to Justice Act, within 30 days of final judgment. See 28 U.S.C. § 2412 (d).

Dated this 26th day of August, 2026.

Theresa L. Fricke
United States Magistrate Judge